## Bryant v. Commonwealth.

(Decided November 23, 1926.)

### Appeal from Breathitt Circuit Court.

1. Homicide.—Evidence Held to Sustain Conviction for Manslaughter.—Evidence held sufficient to sustain conviction for manslaughter.

2. Homicide—Exclusion of Testimony as to Statement Made to Defendant Concerning His Brother's Peril Held Not Prejudicial, where Conviction was for Manslaughter Only.—Where defendant charged with murder was convicted of manslaughter only, exclusion of testimony as to statement made to him concerning danger of his brother, whom he went to aid, held not prejudicial.

3. Homicide—Exclusion of Statement Made to Defendant when he was Told to go to Aid of His Brother Held Not Prejudicial, in View of Showing Otherwise Made.—In prosecution for murder, where defendant showed that he had been told he had better go to aid of his brother, exclusion of testimony that he was told they would kill his brother if he didn't go held not prejudicial.

4. Homicide—Testimony as to Quarrel Between Brothers of Defendant and of Deceased Held Immaterial.—In prosecution for murder, testimony as to beginning of quarrel between brothers of deceased and of defendant held immaterial.

5. Homicide—Testimony as to Reason for Defendant's Brother's Going to Scene of Difficulty Held Immaterial, in Prosecution for Murder.—In prosecution for murder committed when defendant went to aid of his brother, testimony as to reason why defendant's brother went to place where difficulty arose held immaterial.

6. Homicide—Evidence that Deceased's Brother, After the Shooting of Deceased, Shot into Defendant's Hat Lying on Ground, Held Immaterial.—In prosecution for murder, exclusion of evidence that deceased's brother, after the shooting of deceased, shot into defendant's hat, which was lying on the ground, held not error.

7. Homicide—Exclusion of Testimony as to Bad Feeling Between Families of Deceased and Defendant Held Not Error.—In prosecution for murder, excluding testimony of deceased's sister, who had

married defendant's brother after killing, as to bad feeling between families held not error.

8. Criminal Law—Statement by Prosecuting Attorney that Witness was Not Produced Because he was in Jail and of Bad Character Held Not Prejudicial.—Statement of Commonwealth's attorney that he had not produced witness because he was in jail and man of bad character held not prejudicial.

9. Criminal Law—Argument that Deceased's Sister, who had Married Defendant's Brother After Killing, was Bringing Shame on Family, though Improper, Held Not Prejudicial.—In homicide case, argument that sister of deceased, who had married defendant's brother after killing, was sitting by side of man who had murdered her brother and was bringing shame on family, though improper, held not prejudicial.

10. Criminal Law—Under Statute, Verdict Cannot be Disturbed, Except for Error Affecting Substantial Rights of Defendant.—Under Statute, verdict of jury cannot be disturbed, unless on the whole case some substantial right of defendant was disturbed.

A. F. BYRD, W. L. KASH and A. S. JOHNSON for appellant.

FRANK E. DAUGHERTY, Attorney General, for appellee.

OPINION OF THE COURT BY COMMISSIONER HOBSON—Affirming.

Mitchell Bryant and Clarence Bryant were indicted in the Breathitt circuit court for the murder of Dick Herrald. Mitchell Bryant was placed on trial, he was found guilty of manslaughter, and his punishment was fixed at thirteen years' imprisonment. The facts shown by the evidence are these:

Clarence Bryant was courting a sister of Dick Herrald and Ed Herrald. Ed Herrald had taken violent umbrage at Clarence Bryant's attentions to his sister. On August 19, 1925, there was a gathering of the neighborhood for a religious service. Dick Herrald took his wife to the church but did not go in. He remained on the outside and so did a number of other men. The church was on top of a hill not very far from the Kentucky river. Some of the men took their horses down to the river to water them. Down there a difficulty occurred between Ed Herrald and Clarence Bryant in which a pistol was fired; by whom it was not shown. After this Dick Herrald and a number of his relatives went from the church down in that direction and met up with Clarence Bryant in the lane near a mud hole. Ed Herrald was there too

and some cursing and quarreling was going on. Mitchell Bryant, who was up at the church, was informed of the above and that his brother was in danger. Thereupon he got behind Ike Combs on a mule and started down there. But Ike did not ride the mule fast enough so he took from Ike Comb's pocket his pistol and jumped off the mule and walked on down there ahead of Ike and the mule. The proof varies as to what occurred when he got to the crowd. According to the proof for the Commonwealth he said he had come to settle that trouble and settle it right now. Dick Herrald said, "This trouble is settled; do not have nothing of this; there is the road there, take the road." Mitchell Bryant said, "I am going to take it." Herrald said, "I have got this trouble settled now, you had better hush, better have no dispute about things." Mitchell Bryant said, "I am going to settle it right now, by God," and ran against Herrald. Herrald shoved him back; Mitchell Bryant drew his pistol and shot him. On the other hand, the proof for the defendant is that Herrald was standing at the mud hole as Bryant approached and when Bryant got within seven or eight steps of the mud hole Dick Herrald went to kick at him. Bryant said, "What is the matter, Dick?" Herrald said, "You know what is the matter; none of your God dam lies." Bryant went backwards and Herrald went on him. Clarence Bryant, who was sitting on his mule said, "Dick, don't do that." Herrald said to Ed, "You go back and settle with Clarence Bryant; who is afraid of Mitchell Bryant?" Mitchell Bryant backed up the road and Herrald followed him with his right hand under his coat. When he overtook Mitchell he jerked him up the road and jerked his pistol out and shoved Mitchell against a wire fence and as he did this Mitchell jerked out his pistol and fired. The shot struck Herrald about the nose and he died instantly.

It is earnestly insisted that the verdict is against the evidence. While the jury, if they believed the evidence for the defendant, should have acquitted him, it cannot be said that the verdict is palpably against the evidence. If the evidence for the Commonwealth was true Mitchell Bryant did not go down there as a peacemaker. He armed himself before going; the travel of the mule was too slow for him and coming as he did, if the evidence for the Commonwealth is true, he brought on the affray in which Herrald was killed.

It is insisted that the court erred in refusing to allow Mitchell Bryant to state that he told Bradley Short, when he asked him to go with him after his brother Clarence, that they were going to have trouble down there. But this occurred some distance from the place of conflict. The court did allow him to prove by Kelly Bryant that he told him that his brother Clarence was in danger and did allow him to prove that he went down there for this reason. The proof of what he said to Short could have had no effect on the result of the trial, for he was not found guilty of murder; he was only found guilty of manslaughter. His only defense was that he did the shooting in self-defense and this proof would have affected the result in no way.

It is also insisted that he should have been allowed to state that his brother Kelly Bryant told him if he didn't get down there they would kill his brother Clarence. But this, for the reasons above indicated, was not prejudicial, for he did show that Kelly Bryant told him about the trouble down there and told him he had better go. This proof, if admitted, could not have affected the result; it would only be competent on the question of motive in going down there, and this was clearly established by the evidence which the court admitted.

It is also insisted that the real trouble in the case was between Ed Herrald and Clarence Bryant and that the court erred in refusing to allow Clarence Bryant to testify that Ed Herrald rode up against him while they were down near the river and said, "Clarence, give me some liquor," but the case turned on what occurred after Mitchell Bryant got down there. What had previously happened further down on the river threw no light on the real issue in the case. There is proof that Dick Herrald was drinking that day, and the evidence rather leads to the conclusion that he was not the only person in the crowd who was drinking. It is also insisted that the court erred in refusing to allow Andy Roberts to testify that he heard Ike Jett ask Clarence Bryant to go with him back down there and get his horse. But this was immaterial as it would only have tended to show why Clarence Bryant was down there at the time. There was no testimony that Clarence Bryant went down there for trouble, or for any improper motive. It is also ob-

jected that the court refused to allow proof that Ed Herrald shot into Mitchell Bryant's hat, which fell on the ground in the scuffle between him and Dick Herrald and was left lying there on the ground. But this was after the shooting of Dick Herrold and only served to show the state of mind of Ed Herrald, which was immaterial as he had nothing to do with the affray in which Dick Herrald lost his life.

Clarence Bryant and the sister of Ed Herrald and Dick Herrald were married two weeks after the shooting. She was introduced as a witness for the defendant and it is complained that the court erred in excluding her testimony offered to show bad feeling on the part of the Herralds for the Bryants. While she testified to a number of things said by Ed Herrald she only testifies to this as said by Dick Herrald: "I don't want to ever hear tell of you being with Clarence Bryant any more; if you do I am going to clean up you and them both." There were several of the Bryant brothers. She expressly says that he did not say anything about Mitchell Bryant. Only the state of mind of Dick Herrald towards Mitchell Bryant was material; the rejected evidence threw little or no light on this and if admitted could not have affected the result.

Complaint is made also of the statements made by the Commonwealth attorney in his closing argument. The attorney for the defense made the point that the Commonwealth had not introduced Ike Combs on the trial, and in answer to this the Commonwealth attorney said that he had not introduced Ike Combs because he was in jail and a man of bad character. This could not have prejudiced the defendant in any way on the trial. The defendant could have introduced Ike Combs if he had wanted to.

It is also complained that in his closing argument the attorney for the Commonwealth reflected on Clarence Bryant's wife, who had married him since the killing of her brother because she was sitting by the side of the man who had murdered her brother and was bringing shame on the family. The attorney should not have said this, as her testimony had been excluded by the court; but it is hard to see how this could have had any effect on the verdict of the jury.

A jury of the vicinage is the tribunal established by law to determine questions of fact of this sort, and by the

statute their verdict cannot be disturbed here for error on the trial unless on the whole case some substantial right of the defendant was prejudiced.

Judgment affirmed.